584 F.2d 546
 189 U.S.App.D.C. 388, 1978-2 Trade Cases 62,160
 SEATRAIN INTERNATIONAL, S. A., Petitioner,
v.
FEDERAL MARITIME COMMISSION and United States of America, Respondents,
Japan/Korea-Atlantic and Gulf Freight Conference, Intervenor.
 No. 77-1542.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 14, 1978.
Decided July 28, 1978.
As Amended Aug. 25, 1978.
 
 Neal M. Mayer, Washington, D.C., with whom Robin T. Waxman and Paul D. Coleman, Washington, D.C., were on the brief, for petitioner.
 C. Jonathan Benner, Atty., Federal Maritime Commission, Washington, D.C., with whom Edward G. Gruis, Deputy Gen. Counsel, Federal Maritime Commission, Washington, D.C., was on the brief, for respondent Federal Maritime Commission.
 Barry Grossman and Robert J. Wiggers, Washington, D.C., Attys., Dept. of Justice, were on the brief for respondent United States.
 Charles F. Warren, George A. Quandrino and John E. Ormond, Jr., Washington, D.C., were on the brief for intervenor.
 Before WRIGHT, Chief Judge, and McGOWAN and ROBINSON, Circuit Judges.
 Opinion for the court filed by Chief Judge J. SKELLY WRIGHT.
 J. SKELLY WRIGHT, Chief Judge:
 
 
 1
 Seatrain International, S.A., a common carrier by water, petitioned this court for review of an order of the Federal Maritime Commission (FMC) issued under Section 15 of the Shipping Act, 46 U.S.C. § 814 (1970). The challenged order extends the authority of the Japan/Korea-Atlantic and Gulf Freight Conference (JKAG), an association of 13 ocean carriers, to establish conference intermodal tariffs to interior points in the United States. Applying the principles detailed today in our opinion in United States Lines, Inc. v. FMC (Euro-Pacific ), 189 U.S.App.D.C. ----, 584 F.2d 519 (1978), we hold that this order does not reflect adequate consideration of the antitrust implications of the extension approved by the Commission, and we therefore remand the record in this case to the Commission for further consideration.
 
 I. BACKGROUND
 
 2
 Intermodal service involves transportation of goods, generally in containerized shipments, over both land and sea; goods are carried from overseas ports, through ports on one coast of the United States, to destinations inland or on opposite coasts. The rates for such through service, termed intermodal tariffs, must be filed with both the FMC and the Interstate Commerce Commission.[1] Individual ocean carriers may operate this through intermodal service by simply filing the required tariff. Carrier conferences, however, must receive Commission approval under Section 15 of the Shipping Act,[2] separate and independent from their authority to establish common rates for all-water service, in order to develop and file intermodal tariffs.
 
 
 3
 In January 1973 JKAG submitted to the Commission an amendment to its conference agreement to allow JKAG to establish rates and regulations for conference intermodal services from ports in Japan and Korea, through United States Atlantic and Gulf ports, to inland points in the United States. The Commission, while modifying certain aspects of the JKAG amendment, approved the requested authority for an 18-month period.[3] In January 1974 and again in November 1975 the Commission granted additional 18-month extensions of JKAG's intermodal tariff authority.[4] The 1975 extension provided, however, that a conference intermodal tariff could supersede a tariff between the same points previously filed by an individual conference member only if it contained "comparable rates, terms, and conditions of carriage"; otherwise the individual tariff would remain in effect as well.[5]
 
 
 4
 The instant action arose from JKAG's subsequent request for FMC approval of an amendment extending indefinitely the conference's intermodal ratemaking authority and eliminating the requirement that a conference tariff be comparable to an individual tariff in order to supersede it. Notice of this proposed amendment was published in the Federal Register on March 16, 1977,[6] and an opportunity was afforded interested parties to submit comments and request a full Commission hearing.
 
 
 5
 Petitioner Seatrain filed a protest with the Commission in response to this notice and requested a hearing on the question whether approval was justified. Seatrain asserted that the agreement was a Per se violation of the antitrust laws and claimed that sufficient need had not been shown for conference intermodal authority, pointing out that no intermodal tariffs had been filed by the conference over the four years the authority had existed. Seatrain also objected to elimination of the comparable tariff requirement and noted certain areas of the agreement which appeared unclear.[7]
 
 
 6
 On May 18, 1977 the Commission issued an order approving the JKAG amendment with certain modifications accepted by the conference.[8] The Commission found there was no evidence presented to show that indefinite intermodal authority was necessary, but felt the progress which had been made by the conference toward filing an intermodal tariff was sufficient to justify another 18-month extension of its authority.[9] In addition, the Commission required retention of the clause providing that only comparable conference tariffs can supersede individual tariffs and addition of certain clarifying language to the amendment.[10] It is this order of the Commission which Seatrain has asked us to review.
 
 II. ANALYSIS
 
 7
 Under Section 15 of the Shipping Act the FMC is authorized to grant exemptions from the antitrust laws to agreements entered into by common carriers by water. As our opinion today in Euro-Pacific, supra,189 U.S.App.D.C. at ---- - ----, 584 F.2d at 527-528, makes clear, the Commission is required to take account of the antitrust implications of an agreement in determining whether to approve it. In this case, as in Euro-Pacific and in United States Lines, Inc. v. FMC (Combi Lines ), 189 U.S.App.D.C. ----, 584 F.2d 543 (1978), also decided today, the Commission failed to consider the antitrust implications of the amendment it approved.
 
 
 8
 The intermodal conference agreement at issue here, as the Justice Department has pointed out in opposing the Commission's action,[11] represents a significant extension of the conference's ratemaking authority to a new technique of transportation. What is involved in conference ratemaking is elimination of any price competition between conference members. This is price fixing in the traditional sense, long recognized to be a violation of the antitrust laws.
 
 
 9
 The only reference to these antitrust implications of the agreement in the Commission's opinion is found in the context of its denial of unlimited authority to JKAG. There the Commission adverted to its test, upheld by the Supreme Court in FMC v. Svenska Amerika Linien, 390 U.S. 238, 243, 88 S.Ct. 1005, 19 L.Ed.2d 1071 (1968), that where an agreement constitutes a Per se violation of the antitrust laws the proponents bear the burden of establishing that it is "required by a serious transportation need, necessary to secure important public benefits or in furtherance of a valid regulatory purpose of the Shipping Act." In this case, the Commission stated, "such evidence has not been presented," and indefinite authority at this point could not be granted. JA 163. But the Commission went on to state that "inasmuch as the conference has recently agreed to publish and a file a port-to-port water/rail intermodal tariff at the earliest possible date and because the formulation of said tariff is nearing the final stages before filing, the Commission considers progress of this sort sufficient to warrant a limited extension of the conference's intermodal authority." JA 163.
 
 
 10
 Certainly, it would seem unreasonable to read this statement by the Commission to mean that an anticompetitive agreement may be justified by its implementation. More likely, the Commission's statement is intended as a response to Seatrain's claim that an extension of the conference's intermodal authority was unnecessary in view of the failure of the conference to develop any intermodal tariffs in the preceding years. But what is still left unanswered by this explanation is the question why intermodal authority should be extended in light of its antitrust implication. For that question there is simply no evidence of any consideration let alone an answer in the Commission's opinion.
 
 
 11
 It is true that what is involved in this case is not the initial grant of ratemaking authority for an indefinite period, but rather the extension of existing authority for a limited term of 18 months. But the fact that we deal here with a limited extension does not relieve the Commission of its obligation under Section 15 to pass on "any agreement" entered into by the carriers and to consider the antitrust implications in reaching its decision.[12] To be sure, prior Commission experience with an agreement and the fact that it is limited in duration may be taken into account by the Commisson in evaluating the likely anticompetitive effects and determining whether they are justified.[13] However, where, as here, we are faced with the fourth successive 18-month extension of ratemaking authority, any argument for more lenient treatment of anticompetitive effects because of the temporary nature of the authority necessarily must be open to serious question. In any event, justifications based on prior decisions or experience of the Commission or on the temporary nature of the authority must be offered by the Commission in its decision, not supplied Post hoc by its advocates or this court.[14]
 
 
 12
 Because we are unable to find any indication in the Commission's decision that it considered the antitrust implications of extending JKAG intermodal tariff authority, we must remand the record in this case to the FMC for further consideration.[15] Upon remand the Commission is not, as Seatrain argues, required by statute to conduct a full evidentiary hearing on the amendment at issue. For as we held today in Euro-Pacific, the provisions of the Administrative Procedure Act detailing the requirements of formal evidentiary hearings[16] are not applicable to Section 15 proceedings, and the Commission enjoys substantial flexibility in structuring its hearings, consistent with the requirements of fairness.[17] But while the Commission need not conduct a full evidentiary hearing, it must conduct whatever proceedings are necessary for it to secure sufficient information so that its final decision will reflect "a consideration of the relevant factors." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971).
 
 
 13
 So ordered.
 
 
 
 [1]
 See Ex Parte 261 Report V, 351 ICC 490 (1976); 46 C.F.R. § 534.16 (1976)
 
 
 [2]
 46 U.S.C. § 814 (1970)
 
 
 [3]
 See Joint Appendix (JA) 1-20
 
 
 [4]
 See JA 25-26, 36-38, 64-65
 
 
 [5]
 JA 36-38, 64-65
 
 
 [6]
 42 Fed. Reg. 14771 (1977), JA 53-54
 
 
 [7]
 JA 134-142. Lykes Bros. Steamship Co., a member line of the JKAG conference, also filed a protest, but did not seek judicial review of the Commission's decision
 
 
 [8]
 JA 159-165
 
 
 [9]
 JA 163
 
 
 [10]
 JA 165
 
 
 [11]
 The Justice Department, representing the United States as a statutory respondent to this proceeding under 28 U.S.C. § 2344 (1970), argued against affirmance of the FMC order in this case
 
 
 [12]
 See 46 U.S.C. § 814 (1970); United States Lines, Inc. v. FMC (Euro-Pacific ), 189 U.S.App.D.C. ----, ---- - ----, ---- - ----, 584 F.2d 527, 528-529, 529-531 (1978); United States Lines, Inc. v. FMC (Combi Lines ), 189 U.S.App.D.C. ----, 584 F.2d 543 (1978)
 
 
 [13]
 See Euro-Pacific, supra note 12, --- U.S.App.D.C. at ----, 584 F.2d at 530
 
 
 [14]
 See Camp v. Pitts, 411 U.S. 138, 143, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415-421, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)
 
 
 [15]
 See Euro-Pacific, supra note 12, 189 U.S.App.D.C. at ---- - ----, 584 F.2d at 532-534; Kennecott Copper Corp. v. EPA, 149 U.S.App.D.C. 231, 462 F.2d 846 (1972)
 
 
 [16]
 5 U.S.C. §§ 556-557 (1976)
 
 
 [17]
 See Euro-Pacific, supra note 12, 189 U.S.App.D.C. at ---- - ----, 584 F.2d at 536-537; Marine Space Enclosures, Inc. v. FMC, 137 U.S.App.D.C. 9, 21, 420 F.2d 577, 589 (1969)